LAWRENCE M. HADLEY - State Bar No. 157,728
lhadley@glaserweil.com
STEPHEN E. UNDERWOOD - State Bar No. 320,303
sunderwood@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorneys for Plaintiff*
*Core Optical Technologies, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORE OPTICAL TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NOKIA CORPORATION and NOKIA OF AMERICA CORPORATION;<br><br>ADVA OPTICAL NETWORKING SE and ADVA OPTICAL NETWORKING NORTH AMERICA, INC.; and<br><br>CISCO SYSTEMS, INC.<br><br>Defendants. | CASE NO: 8:19-cv-2190-JAK-RAO<br>CASE NO: 8:20-cv-1463-JAK-RAO<br>CASE NO: 8:20-cv-1468-JAK-RAO<br><br>**CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EVIDENCE OF POST-EXECUTION CONDUCT**<br><br>Trial Date: February 18, 2025<br><br>Hon. John A. Kronstadt |
| NORTHROP GRUMMAN SYSTEMS CORPORATION,<br><br>Plaintiff-in-Intervention,<br><br>v.<br><br>CORE OPTICAL TECHNOLOGIES, LLC, NOKIA CORPORATION, NOKIA OF AMERICA CORPORATION, CISCO SYSTEMS, INC., ADVA OPTICAL NETWORKING SE and ADVA OPTICAL NETWORKING NORTH AMERICA, INC.,<br><br>Defendants-in-Intervention | |

## I. INTRODUCTION

The undisputed evidence establishes that—despite knowing that Core Optical ("Core") claimed ownership of the '211 patent, and was asserting it against others, since at least *2014*—Northrop did nothing to claim ownership until it filed its complaint-in-intervention in *2024*, a decade later. *See* JTX-84 (May 2014 subpoena to Northrop in the *Ciena* case, identifying the '211 patent as being asserted in litigation); JTX-046-002 (Northrop privilege log, indicating that on March 23, 2016, Northrop in-house attorney Scot Hewitt gave an "Email and slide presentation reflecting attorney analysis regarding Core Optical and [the] '211 patent"); Day 2 Tr. (Rough), 120:2-9: (Dr. Core's testimony: "Q. So between 2014 until you heard that Northrup intervened in this case, did Northrup ever make any demands to you for the '211 patent? A. Northrup has never contacted me. Q. Did Northrup ever contact Core Optical and? A. No. Q. Demand that the '211 patent be reassigned to it? A. No.")

"Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." Restatement (Second) of Contracts § 202(4) (1981). At any time over the ***ten years*** since it was notified of Core's ownership and assertion of the '211 patent in 2014, Northrop had the "opportunity for objection" to Core's claim of ownership, and the opportunity to claim ownership for itself. For ***ten years***, it did not. This "acquiesce[nce] …. is given great weight in the interpretation of the agreement," and strongly supports the conclusion that the parties understood Dr. Core to own the patent. *Id.*

Recognizing the highly probative—and damaging, if not outcome determinative—nature of this evidence, Defendants and Northrop (herein, "Defendants") seek to exclude it. To do so, Defendants rely on what they call the "black letter canon of contract interpretation that the mutual intent of the parties may [only] be ascertained by reviewing the actions of the parties to a contract *prior to* any

2

controversy as to its meaning has arisen." Dkt. 333-1 at 3 (emphasis in original). While Defendants cite no fewer than twelve cases mentioning this "black letter canon," they do not analyze any of them. That is because none of the cited cases actually support Defendants' position. Under the governing law, there is no basis to exclude the highly probative evidence of Northrop's ten-year acquiescence to Core's ownership of the '211 patent. Thus, Defendants' motion should be denied.

## II.     LEGAL STANDARD

Defendants move to "preclude" the parties from "proffering any … evidence" of "Northrop Grumman's conduct after … March 2016."[1] Dkt. 333 at 1. Thus, Defendants' Motion is a motion to exclude evidence. However, the Motion does not identify the rule(s) of evidence under which it is being brought.

In court, Defendants stated that their motion would be brought on grounds of "relevance."  Assuming that is the case[2], the applicable Rule is Fed. R. Evid. 401, which provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Rule 401's 'basic standard of relevance ... is a liberal one.'" *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) (*quoting Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 587 (1993)). Because "Rule 401 of the Federal Rules of Evidence contains a very expansive definition of relevant evidence" (*United States v. Curtis*, 568 F.2d 643, 645 (9th Cir. 1978)), the

---

[1] Numerous items of such evidence have already been "proffered" and accepted by the Court, including Dr. Core's testimony cited above (which was admitted without objection), and multiple Exhibits whose admission has been stipulated (e.g., JTX-46, JTX-60, JTX-61, JTX-62, JTX-304, JTX-306). Thus, to the extent it addresses evidence that has already been admitted, Defendants' Motion is moot.

[2] Defendants' Motion also refers to the limited "probative value" of this evidence, which could be interpreted as an invocation of Rule 403. Dkt. 333 at 3. However, "'Rule 403 … 'has no logical application to bench trials' and is 'a useless procedure'" in such trials. *United States v. De Anda*, No. 18-CR-00538-TSH-1, 2019 WL 2863602, at *4 (N.D. Cal. July 2, 2019) (*quoting Gulf States Utilities Co. v. Eco dyne Corp.,* 635 F.2d 517, 519 (5th Cir. 1981)). Thus, there is no basis for Defendants to seek to exclude this evidence in this bench trial under Rule 403.

relevance requirement is a "minimal" one. *United States v. Whitehead,* 200 F.3d 634, 640 (9th Cir. 2000); *see also Pickens v. Mercedes-Benz USA, LLC,* No. 2:23-CV-4142-MEMF-MRW, 2024 WL 4868266, at *2 (C.D. Cal. Oct. 31, 2024) (same).

**III. ARGUMENT**

Defendants' Motion should be denied because the evidence of Northrop's ten-year acquiescence to Core's ownership of the '211 patent satisfies the "minimal" standard of relevance under Rule 401. Nothing in the so-called "black letter canon" cited by Defendants (Dkt. 333-1 at 3) compels a contrary result.

### A. Defendants' Argument Is Foreclosed by the Law of the Case

The Court need not even reach the merits of Defendants' argument, because it is foreclosed by the law of the case. "When the language in a contract is ambiguous and uncertain, resort may be had to the subsequent conduct of the parties for the purpose of discovering what they understood the agreement to mean, and this rule is not limited solely to the joint conduct of the parties." 14A Cal. Jur. 3d Contracts § 227. The Federal Circuit has already found that the Invention Agreement is ambiguous, at least as to the "own time" clause. *Core Optical Techs., LLC v. Nokia Corp.*, 102 F.4th 1267, 1278 (Fed. Cir. 2024). That finding is conclusive as law of the case. *Gonzalez v. Arizona*, 677 F.3d 383, 389-390, n. 4 (9th Cir. 2012).

After determining that the Invention Agreement was ambiguous, the Federal Circuit "undert[ook]" to "identify" some of the "facts that, under California contract law, might be material" to the interpretation of the contract. *Core Opt. Techs.*, 102 F.4th at 1278. The first such fact which the Federal Circuit identified was "the evidence that, despite a recorded assignment from Dr. Core to Core Optical at the Patent Office …TRW and its successor Northrop Grumman did not assert ownership for a very long time." *Id.* The specific "evidence" which the Federal Circuit cited was Dr. Core's statement, in Paragraph 103 of his summary judgment Declaration, that "neither Northrop nor TRW has *ever* claimed to Core Optical or to any other entity that it owns the '211 patent." *Id.* (emphasis added). In full, Paragraph 103 of Dr.

4

Core's prior Declaration—which the Federal Circuit identified as "evidence" relevant to the interpretation of the contract—stated: (*Cisco* Dkt. 83-3 at 28 of 41):

> 103. To this day, neither TRW nor its successor, Northrop Grumman, has ever asserted any ownership interest in the '211 patent. No one from TRW or Northrop has ever contacted me directly or through counsel to state that they believe they have rights in the '211 patent. That is true even though Northrop Grumman has known about the '211 patent since at least 2014, when I understand Northrop received a subpoena from counsel for Ciena in the Ciena case, specifically attaching a copy of my patent, and asking Northrop to produce all documents relating to it.

This Paragraph specifically addresses Northrop's failure to claim ownership of the '211 patent from 2014 through the date the Declaration was signed in October 2021—***five years after*** the "March 2016" cutoff Defendants seek to impose. Because the Federal Circuit found this statement to be relevant, it necessarily found that evidence of Northrop's conduct after March 2016 is relevant. Thus, Defendants' Motion is foreclosed by the law of the case. *Gonzalez*, 677 F.3d at 389-390, n. 4.

### B. No "Dispute" Arose Until November 2024

Defendants' Motion also fails because no "dispute" arose between Northrop and Core regarding ownership of the '211 patent until Northrop filed its complaint-in-intervention in November 2024. Thus, even applying Defendants' so-called "black letter canon" that "construing contracts based on conduct is restricted to actions which occur before a dispute has arisen" (Dkt. 333-1 at 1), Northrop's conduct is relevant up to and including November 2024.

"The acts of the parties under the contract afford one of the most reliable means of arriving at their intention." 14A Cal. Jur. 3d Contracts § 227. This "rule … is predicated on the commonsense concept that actions speak louder than words; thus, when the parties to a contract perform under it and demonstrate by their conduct that

5

they knew what they were talking about, the court should enforce that intent." 14A Cal. Jur. 3d Contracts § 227. However, once a legal dispute over the contract has arisen, the parties have an incentive to engage in "self-serving conduct" to advance their preferred interpretation. Restatement (Second) of Contracts § 202 (1981), Comment g. Thus, in general, courts look to the parties' conduct "during the period while [their relations were] harmonious," rather than "when subsequent differences have impelled them to resort to law," to interpret the contract. *Crestview Cemetery Ass'n v. Dieden,* 54 Cal. 2d 744, 753, 356 P.2d 171, 176 (1960).

Here, based on the admitted evidence, Core and Northrop's relations under the Invention Agreement were "harmonious" until Northrop filed its complaint-in-intervention in November 2024. Defendants cite to the witness statement by Lawrence R. LaPorte. Dkt. 333-1 at 2-3. However, that testimony has been withdrawn (and without objection by Defendants); thus, Defendants cannot rely upon it to establish that there was a crystallized "dispute" between Core and Northrop as of March 2016. Defendants also cite to the witness statement by Scot Hewitt. *Id.* However, Defendants did not put Mr. Hewitt on the stand, and Core has not yet had an opportunity to test his credibility on cross-examination. Thus, it is improper for Defendants to rely on Hewitt's testimony at this time, because Core has had no opportunity to challenge it via cross-examination.

Even if Hewitt's statement is considered, it does not establish that there was a crystallized "dispute" between Core and Northrop in March 2016. "A dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture." *Kader v. S. California Med. Ctr., Inc.*, 99 Cal. App. 5th 214, 222 (2024). "In other words, a dispute cannot arise until both sides have expressed their disagreement, either through words or actions." *Id.* (quotation omitted). Here, Hewitt merely states that: (i) he "discuss[ed] the issue of ownership" of the patent with "Manatt attorneys" (Hewitt, ¶ 3); (ii) he "met with attorneys from Manatt … to discuss the issue of ownership" (*id.*, ¶ 4); (iii) the

attorneys "explained why they believed the TRW Invention Agreement supposedly did not give Northrop rights to the '211 patent" (*id.*); (iv) the attorneys "proposed mediating the issue of ownership," which was rejected (*id.*, ¶¶ 5-6); (v) the attorneys disclosed that they had obtained a writing from "a former TRW manager," but declined to provide a copy (Finkenbeiner) (*id.*, ¶ 7); and (vi) the attorneys "re-raise[d] the idea of mediation," which Northrop declined (*id.*, ¶ 8). Nothing in Hewitt's statement establishes that Core "assert[ed] a right, claim or demand" to Northrop. For instance, Hewitt does not state that Core demanded that Northrop sign a document disclaiming all rights in the '211 patent; does not state that Core threatened litigation if Northrop would not sign such a document; and does not identify any other "claim or demand" which Core made of Northrop. He simply identifies "discussions." Such "discussions" do not rise to the level of a "dispute" converting the Core-Northrop relationship from "harmonious" to "non-harmonious"—as confirmed by Northrop's subsequent ***eight years of absolute silence*** on the issue of ownership.

Thus, even if Hewitt's statement is considered (which it should not be), it does not establish that there was a "dispute" between Core and Northrop in March 2016. The "dispute" arose in November 2024, when Northrop sued Core (without warning).

Defendants cite twelve cases in their Motion. None are apposite.

Seven of the cases are inapposite because they do not actually address the relevance of post-"dispute" conduct in interpreting a contract. Rather, in those cases, while the court recited the "black letter canon" on post-dispute conduct in its statement of the standards of contract interpretation, it ***did not apply it***, because neither party sought to rely on post-"dispute" conduct. Those cases are: (i) *Univ. Sales Corp. v. Cal. Press Mfg. Co.*, 20 Cal. 2d 751, 761 (1942); (ii) *Work v. Assoc. Almond Growers*, 102 Cal. App. 232, 235 (1929); (iii) *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 712 (2009); (iv) *S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.*, 74 Cal. App. 4th 1232, 1242 (1999); (v) *Kennecott Corp. v. Union Oil Co. of Calif.*, 196 Cal. App. 3d 1179, 1189 (1987); (vi) *Bohman v.*

1  *Berg*, 54 Cal. 2d 787, 796 (1960); (vii) Mitau v. Roddan, 149 Cal. 1, 14 (1906)).

2  The remaining five cases, while addressing post-dispute conduct, do not
3  support Defendants' relevance argument.

4  In *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998), one
5  party sought to introduce, as evidence of "conduct" relevant to contract interpretation,
6  statements that the other party made in an arbitration brief submitted during
7  arbitration over the contract. The court held that a "dispute had obviously arisen as to
8  the terms of the … Agreement" when those statements were made, because "the brief
9  was submitted while the parties were arbitrating their rights under the contract." *Id.*
10 Thus, "the district court should not have considered that brief in determining the
11 meaning of the contract," because it was post-"dispute" conduct. *Id.* Here, by
12 contrast, there was no arbitration or other adversarial proceeding between Core and
13 Northrop—or even the suggestion of such a proceeding—until Northrop filed its
14 complaint-in-intervention in November 2024. Thus, *Wolsey* is inapposite.

15 In *Mag Aero. Indus. v. Aveox, Inc.*, No. BC629619, 2018 Cal. Super. LEXIS
16 2978, *32 (Jan. 26, 2018)—which is an unpublished Superior Court decision adopting
17 a plaintiff's proposed findings of fact and conclusions of law (copy attached as
18 Exhibit A)—the court adopted the Plaintiff's proposed finding that "the applicable
19 provisions of the Supply Contract, as amended, are unambiguous with regard to
20 ownership of the Disputed IP," and "[i]t is therefore not necessary to resort to
21 extrinsic evidence to interpret" the contract. Ex. A at 13. While the court did discuss
22 certain conduct of the parties in 2015-2017, it expressly declined to find that there
23 was a "formal dispute" between them at that time, because it did not need to in view
24 of its conclusion that the contract was unambiguous. *Id.* at 16-17. Thus, *Mag Aero*—
25 an unpublished, non-precedential Superior Court decision—sheds no light on whether
26 there was a "dispute" between Core and Northrop in March 2016.

27 In *People v. Allison,* 39 Cal. App. 5th 688 (2019), the court actually ***accepted***
28 ***and considered*** evidence of the parties' conduct after a dispute had arisen. There, a

8

criminal defendant entered a plea agreement in 2005, allegedly for a 51 year sentence (the plea agreement itself was not in evidence). *Id.* at 692-693, 702. In 2017, after a successful petition for *habeas corpus,* the defendant was re-sentenced to 45 years and eight months. *Id.* at 695. In an appeal from that sentence, the key issue was the "nature of the sentence agreed to by the parties in 2005." *Id.* at 701. Applying the "rules of contract interpretation," the court "look[ed] to the parties' conduct to determine the nature of their 2005 plea agreement." *Id.* at 702. Specifically, the court looked to the parties' "conduct in 2017" at the 2017 resentencing hearing to conclude that "the parties intended in 2005 to give the … court the discretion to impose particular, lawful sentences of up to but no greater than 51 years." *Id.* at 703. A "dispute" had clearly arisen between the People and the defendant regarding the 2005 plea agreement by the time of the 2017 hearing, yet the court ***considered*** the 2017 conduct in interpreting the 2005 agreement. *Id.* Thus, *Allison* does not help Defendants; if anything, it stands for the proposition that a court ***may*** consider post-"dispute" conduct in interpreting an ambiguous agreement.

In *Heston v. Farmers Ins. Grp.,* 160 Cal. App. 3d 402 (1984), the dispute was between an insurance agent for Farmers Insurance, Heston, and Farmers itself. Heston and Farmers had a contract governing the terms of his insurance agency. *Id.* at 407. Heston understood that, if the contract were terminated, he would be able to keep all of his customer files, and continue to service his customers. *Id.* at 412. On January 25, 1982, Farmers sent Heston a self-serving letter, stating its position that, upon termination, Heston would have to surrender his customer files and cease servicing his customers. *Id.* at 413. Farmers sought to introduce that letter as evidence in support of its interpretation. *Id.* The court found that "[a] dispute over the terms of the Agreement clearly had arisen at the time the January 25 letter was sent," and held that "Farmers cannot impose its own interpretation six years after the signing of the Agreement, after it had become apparent that [the clause] presented a problem, and now claim that Heston's failure to respond indicates his acquiescence." *Id.* Thus,

9

despite the letter, the court adopted Heston's interpretation of the contract. *Id.* at 593. Here, no "dispute over the terms of the [Invention] Agreement … had arisen" as of March 2016, and unlike Farmers, Core is not seeking to rely on its ***own*** self-serving conduct to support its interpretation. Rather, it is relying on ***Northrop's*** inaction—despite being on notice of the patent and Core's ownership thereof—to show that ***Northrop*** acquiesced to Core's interpretation. Thus, *Heston* is inapposite.

Finally, in *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285 (1970), the dispute was between the City of Los Angeles and a construction contractor. On February 23, 1965, the contractor notified the City that the work was far more expensive than anticipated, and that it would not continue work without a change order increasing the contract price and permitting use of "rotary mud." *Id.* at 296. On March 8, the City responded that "consideration of alternate methods of constructing the project is not thought to be necessary," and directed the contractor to resume work. *Id.* On March 25, 1965, the City sent a letter "authorizing use of rotary mud and stating that the city would assume the additional cost." At trial, the contractor introduced that letter as evidence that the parties intended the ***original*** contract, signed in 1964, to encompass the use of rotary mud (and the corresponding costs). *Id.* at 296-297. The Supreme Court held the admission of that letter was error[3] because: (i) it was evidence of a compromise offer under Cal. Evid. Code § 1152; and (ii) "[b]y March 8, 1965, the parties had reached a stage of clear disagreement on the crucial question whether plaintiff was entitled to a change order," and thus, the letter was improper post-dispute evidence. *Id.* Here, Core is not seeking to rely on evidence of any "compromise offers" under § 1152—it is relying on Northrop's ***inaction*** in the face of its knowledge of the '211 patent. And, as discussed above, no "dispute" arose between Core and Northrop until 2024. Thus, *Warner* is inapposite.

---

[3] Nonetheless, the Court found the error harmless, and affirmed the judgment of the trial court. *Id.* at 299-300.

In sum: none of Defendants' cases support their requested relief. Even if Hewitt's statement is considered (which it should not be), there is no evidence of a "dispute" between Core and Northrop until November 2024. Thus, there is no basis to exclude the clearly relevant evidence of Northrop's inaction from 2014-2024.

### C. The Rationale of the Post-Dispute Conduct Rule Does Not Support Excluding the Evidence at Issue

As discussed above, the rationale of the rule against using post-"dispute" evidence to construe a contract is that parties may start to engage in "self-serving conduct" to further their preferred interpretation once a dispute has crystallized. Restatement (Second) of Contracts § 202 (1981), Comment g; *see also Heston*, 160 Cal. App. 3d at 413 (rejecting Farmers' attempt to use its self-serving post-dispute letter to further its preferred interpretation). Here, Core is not seeking to rely on its ***own*** conduct to support its interpretation—it is seeking to rely on ***Northrop's*** conduct (or, more accurately, its lack of conduct, along with no contrary disagreement or adversarial posture by Core Optical). Once Northrop was put on notice of Core's ownership of the '211 patent, and its assertion of that patent against others, in 2014-2016, Northrop would have been "on alert" that it had a potential claim against Core. Thus, if Northrop had any belief it owned the patent, the "self-serving" approach would have been for Northrop to vigorously, affirmatively and immediately claim ownership of the '211 patent. Yet, it did the opposite: ***nothing***. Northrop's very ***lack*** of "self-serving" conduct is highly probative evidence that Northrop did ***not*** believe it owned the '211 patent. Thus, the rationale of the post-"dispute" conduct rule does not support excluding that evidence; rather, it supports that evidence's ***admission***.

In any event, Northrop's ten years of inaction from 2014-2024 plainly satisfies the "minimal" standard of relevance under Rule 401. *Whitehead,* 200 F.3d at 640. And even if a formal dispute had arisen in March 2016 (which it did not), Northrop still took no action to claim ownership between the time it learned of Core's assertion of ownership in 2014 through the Ciena subpoena and March 2016. Thus,

11

Defendants do not and cannot dispute that Northrop's post-execution conduct (i.e., its lack of action) between 2014 and 2016 is relevant to contract interpretation, and Northrop's post 2016 inaction is relevant as well. Thus, Defendants' motion to exclude all evidence for the entire time period should be denied.

### D. Defendants' "No Weight" Request Is Premature

As an alternative to exclusion, Defendants request that any evidence of Northrop's post-March 2016 conduct be given "no weight." Dkt. 333-1 at 4. That request lacks merit because this evidence is relevant, as discussed above. However, this request is premature. The "weight" to be given admitted evidence is something to be addressed in post-trial briefs. Defendants will be free to argue, in their post-trial brief, that this or other evidence should be given "no weight." But there is no reason to prejudge the "weight" to be given evidence until all evidence is admitted.

Thus, Defendants' request that evidence be given "no weight" should be denied as unripe and premature, subject to reopening in their post-trial brief.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in full.

Respectfully submitted:

DATED: February 21, 2025

GLASER WEIL HOWARD
AVCHEN & SHAPIRO LLP

By: */s/ Lawrence M. Hadley*
LAWRENCE M. HADLEY
STEPHEN E. UNDERWOOD

Attorneys for Plaintiff
Core Optical Technologies, LLC